NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1377
_____

DAVID HATCHIGIAN,
                                        Appellant,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS, LOCAL UNION NO. 98, HEALTH &
WELFARE FUND; BOARD OF TRUSTEES OF LOCAL
UNION NO. 98 HEALTH & WELFARE FUND
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 11-cv-05177)
District Judge: Honorable Ronald L. Buckwalter
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 23, 2013

Before:  FUENTES, VANASKIE and VAN ANTWERPEN, Circuit Judges

(Opinion filed:  July 24, 2013)
_____

OPINION
_____


PER CURIAM

        Appellant David Hatchigian appeals from an order of the District Court granting

summary judgment to the defendants.  For the reasons that follow, we will affirm.

        The International Brotherhood of Electrical Workers, Local Union No. 98 Health

and Welfare Fund is a trust fund established to fund health care benefits for the members

of IBEW Local Union No. 98. Hatchigian, a union member since 1968, was a participant in the Fund. On August 17, 2007, Hatchigian received notice that his health care benefits were being terminated because he did not meet the minimum requirement of 350 hours worked during the previous quarter. The notice also informed him that he could choose to elect continuing coverage through self-payment, pursuant to the Consolidated Omnibus Budget Reconciliation Act ("COBRA").

Hatchigian appealed the termination of his benefits to the Trustees of the Fund, contending that he was eligible for continued coverage under Article IV, Section E of the Health and Welfare Benefits Plan. Section E, entitled "Supplemental Coverage Under Emergency Economic Conditions," provides for continuing coverage to employees "who are on work layoff and cannot find work opportunities due to economic conditions." Section E notes that such supplemental coverage is available "[t]o the extent the Trustees determine that the Plan's assets are sufficient and economic conditions warrant." Section E states that, upon a determination that the Plan's assets are sufficient and economic conditions warrant, the Fund "will" provide supplemental coverage.

Hatchigian's appeal was denied in a November 29, 2007 letter sent from Frank M. Vaccaro and Associates, administrators of the Fund, with an explanation that the Trustees had not made a determination that economic conditions warranted the continuation of coverage in 2007 for union members who were unemployed. Hatchigian sent an amended communication to the Fund, reiterating his contention that he was eligible for supplemental coverage under Section E. This second appeal was considered and denied by the Trustees at their January 2008 meeting, and Hatchigian was subsequently notified of the decision. Hatchigian's COBRA coverage was terminated for the August 2007

2

benefits quarter because he did not pay the required premium. Hatchigian did not receive coverage for eight additional quarters prior to his retirement. Following his retirement, Hatchigian was restored to long-term coverage.

On August 15, 2011, Hatchigian, through counsel, brought suit in the United States District Court for the Eastern District of Pennsylvania against the Trustees and the union, alleging violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 141 et seq. Hatchigian sought to recover money damages in excess of $23,000 for the benefit quarters between August 1, 2007 and June 1, 2010. Hatchigian deposed several Trustees, after which the defendants moved for summary judgment, Fed. R. Civ. Pro. 56(a). Hatchigian opposed the motion. In his opposition he acknowledged deposition testimony to the effect that, although not insolvent, the Fund was losing money during the relevant time period. However, Hatchigian then supplemented his opposition with an exhibit showing union unemployment statistics for 2007. Based on this exhibit, Hatchigian contended that there was not full employment in 2007, and that unemployment was on the rise in the first two quarters of 2007.

In an order entered on January 15, 2013, the District Court granted the defendants' motion and awarded summary judgment to the defendants on both counts of the complaint. With respect to Hatchigian's ERISA claim, the District Court concluded that there was not enough in the summary judgment record to indicate a triable issue with respect to whether the Trustees had acted in an arbitrary and capricious manner in failing to extend supplemental coverage to unemployed union members for the August 2007

3

benefits quarter. See Hatchigian v. I.B.E.W. Local 98, Health and Welfare Fund, 2013 WL 159814, at *5 (E.D. Pa. January 15, 2013).

Hatchigian appeals pro se. We have jurisdiction under 28 U.S.C. § 1291. We review a District Court's grant of summary judgment *de novo*. See Alcoa, Inc. v. United States, 509 F.3d 173, 175 (3d Cir. 2007). Hatchigian contends that the District Court erred in awarding summary judgment to the defendants on his ERISA claim by failing to consider the Trustees' duty to monitor the daily "no-work" lists prior to rendering a supplemental coverage determination, and by placing undue emphasis on the issue of the Fund's financial health. Hatchigian has not argued that the District Court's disposition of his LMRA claim was in error and thus this issue is waived. See Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 88 (3d Cir. 1987) (issue not addressed in brief is deemed waived on appeal).

We will affirm. Summary judgment is proper where the summary judgment record "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In addition, we are required to view the facts in the light most favorable to the non-moving party, and make all reasonable inferences in his favor. See Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994). But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A

4

genuine issue of material fact is one that could change the outcome of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

When evaluating challenges to the denial of benefits in actions brought under ERISA, 29 U.S.C. § 1132(a)(1)(B), district courts are to review the plan administrator's decision under a *de novo* standard of review, unless the plan grants discretionary authority to the administrator or fiduciary to determine eligibility for benefits or interpret the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). When discretionary authority is given to an administrator of a plan, a deferential standard – the "arbitrary and capricious" standard – is applied. See id. at 111. See also Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009) ("[C]ourts reviewing the decisions of ERISA plan administrators or fiduciaries … should apply a deferential abuse of discretion standard of review across the board[.]"). Hatchigian does not dispute that the deferential "arbitrary and capricious" standard applies to his ERISA claim.[1]

When the arbitrary and capricious standard applies, a court should uphold the plan administrator or fiduciary's determination to deny benefits unless it was clear error or not rational. See Gillis v. Hoechst Celanese Corp., 4 F.3d 1137, 1141 (3d Cir. 1993). Review is thus narrow, and a court is not free to substitute its judgment for that of the

---

[1] Even if Hatchigian disputes the issue, see Appellant's Brief, at 20, the summary judgment record does not support an inference that the Trustees labored under a conflict of interest in his case. See James v. Int'l Painters & Allied Trades Indus. Pension Plan, 710 F. Supp.2d 16, 24 (D.D.C. 2010) ("[A]s a multi-employer pension fund, as is the case here, the defendants do not pay beneficiaries from their own funds . . . and thus the Court need not be concerned about conflicts of interest.). Cf. Estate of Schwing, 562 F.3d at 525 (when abuse of discretion standard apples, any conflict of interest is but one of several factors that may be considered in determining whether the administrator or fiduciary abused its discretion).

5

plan administrator or fiduciary in determining eligibility for plan benefits. <u>Doroshow v.</u>

<u>Hartford Life & Accident Ins. Co.</u>, 574 F.3d 230, 234 (3d Cir. 2009).

Hatchigian argued in opposing the defendants' summary judgment motion that he

failed to meet his hours during the August 2007 work quarter due to a shortage of work,

but he was willing and able to work, and thus the Trustees acted in an arbitrary and

capricious manner in failing to invoke Section E supplemental coverage for this period.

In support of his argument, he relied on a written statement the Fund provided to the

United States Department of Labor concerning when it decides to invoke Section E

supplemental coverage.[2]  In this statement, counsel for the Fund stated:

> In determining whether or not to provide supplemental coverage, the Trustees review the overall work hours and employment opportunities available to participants as a whole.  Supplemental coverage is extended only when the Trustees conclude that a sufficient number of participants are unable to find work opportunities due to economic conditions and through no fault of their own.  There is no magic formula used in making that determination.  Rather it is a decision made based on the facts and circumstances at the time[.]

(Defendants' Motion for Summary Judgment, Ex. "3," Letter dated July 22, 2008 from

William T. Josem to Ellen W. Fontenot.)

The Trustees thus represented to the Labor Department that supplemental

coverage will be extended when a "sufficient number of participants are unable to find

work opportunities due to economic conditions."  And yet, Hatchigian argues on appeal,

they admitted in deposition testimony, that they failed to consider the daily out-of-work

lists.  By failing to consider the daily out-of-work lists before deciding not to invoke

Section E supplemental coverage for the August 2007 benefits quarter, the Trustees acted

in an arbitrary and capricious manner in denying supplemental coverage.

---

[2] The Department of Labor contacted the Fund after receiving a letter from Hatchigian.

We agree with the District Court that there was no genuine issue of material fact with respect to whether the Fund Trustees acted in an arbitrary and capricious manner in deciding not to extend Section E supplemental coverage during the August 2007 benefits quarter. As a threshold matter, the parties do not dispute that Section E on supplemental coverage is a discretionary provision, and, that when supplemental coverage is triggered under this provision, it is triggered for *all* participants who otherwise would qualify for such coverage, and not just Hatchigian. Section E plainly leaves it to the individual judgment of the Trustees whether or not to extend supplemental coverage for any given benefit quarter. Hatchigian points to no language in the provision, set forth in the margin with the emphasis in the original,[3] to support an assertion that it will automatically go

---

[3] **Article IV, Section E**
**Supplemental Coverage Under Emergency Economic Conditions**

> To the extent the Trustees determine that the Plan's assets are sufficient, the Trustees may provide for benefits for individuals who are on work layoff and cannot find work opportunities due to economic conditions. Upon determination by the Trustees that the Plan's assets are sufficient and economic conditions warrant, the Fund will provide supplemental coverage. Accordingly, you will be eligible for continued benefits even if you are unemployed and do not make contributions to the Plan if you meet all the conditions outlined below: You must have held eligibility status under the Plan for not less than four continuous previous quarters immediately prior to your last work layoff. You will be entitled to participate in the supplemental program only so long as you remain ready, willing and available to work for a contributing employer.
>
> *     *     *     *
>
> **PLEASE NOTE THAT THE TRUSTEES HAVE THE POWER AND DUTY TO TERMINATE COVERAGE OR TO REVISE THE CONDITIONS FOR COVERAGE UNDER THIS PROVISION AT ANY TIME THEY DETERMINE THAT SUCH TERMINATION OR REVISION IS NECESSARY TO PRESERVE THE FUND'S ASSETS OR THAT ECONOMIC CONDITIONS HAVE CHANGED. THE TRUSTEES WILL RENEW OR CANCEL THIS PROVISION ON A QUARTERLY BASIS OR AS MAY OTHERWISE BE NECESSARY.**

into effect for all union member electricians on the no-work lists, as he argues. See Appellant's Brief, at 9.

Moreover, nothing in the summary judgment record shows that the Trustees ignored the unemployment factor. Although Hatchigian may have demonstrated for summary judgment purposes that the daily out-of work lists were useful objective information, he argues that they were the *only* true barometer of unemployment throughout the union. He did not, however, support this allegation, as required by the summary judgment rule, Fed. R. Civ. Pro. 56(e), or come forward with evidence to show that the Trustees, who were equally divided between union and management representatives, did not have direct and personal knowledge about whether union unemployment was high and work opportunities few from April 2007 through June 2007, the period relating to the August 2007 benefits quarter. Furthermore, as explained by the District Court, "the Trustees decided to extend Supplemental Coverage under Section E in May 2009 upon a determination that the Fund's assets were sufficient and a sufficient number of employees were out of work – demonstrating that there are circumstances under which they will decide to do so." Hatchigian, 2013 WL 159814, at *5.

In addition, Section E plainly permits the Trustees to consider the Fund's assets. Although the Fund was not insolvent, it had recently lost some of its value. Trustee Burrows testified that the $37 million Fund had in prior years been worth $52 million. It was reasonable for the Trustees to decide that the simple fact of cash on hand did not warrant extending Section E supplemental coverage against a background of declining assets. Accordingly, as held by the District Court, there was no triable ERISA issue with respect to whether the Trustees failed in their duty to properly balance the work

8

opportunities, the long-term viability of the Fund, and the number of affected participants in arriving at their Section E adverse supplemental coverage decision with respect to the August 2007 benefits quarter.

For the foregoing reasons, we will affirm the order of the District Court awarding summary judgment to the defendants.